IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| WILSON SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-0917-CV-W-ODS |
| ) | |
| THE CITY OF KANSAS CITY, ) | |
| MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

<u>ORDER AND OPINION (1) GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AND (2) DENYING MOTION TO FILE SUR-REPLY</u>

Pending is Defendants' Motion for Summary Judgment (Doc. # 82). The motion is granted in all respects as to the members of the Board of Police Commissioners. The motion is granted in part and denied in part as to the three Kansas City, Missouri Police Officers. Plaintiff's Motion to File Sur-reply (Doc. # 99) is denied.

## I. BACKGROUND

At about 1:00 a.m. on December 12, 2006, Terry Smith ("Terry") got into an argument with his girlfriend, Anissia Ross, outside the house of his brother, Plaintiff Wilson Smith ("Plaintiff"). Kansas City Police Officers Troy Taff ("Taff"), Manuel Anchondo ("Anchondo"), and Lee Malek ("Malek") were dispatched to meet with Terry's girlfriend, who called 911 after the argument ended. The Officers met with Ms. Ross in a parking lot near Plaintiff's home. Taff testified that when they arrived on the scene, it appeared Ms. Ross had been in some sort of physical altercation; her clothes were in disarray, her hair was messed up, and she had some scrapes, bumps, and bruises. She did not request medical attention as a result of her alleged injuries. Ms. Ross told the Officers that Terry might be at Plaintiff's house, or he might be at another relative's house a block away.

The Officers drove to Plaintiff's house to conduct a residence check to see if

Terry was at that address. Officer Malek and Taff testified that they thought Terry may be armed, however, it is unclear upon what basis the Officers formed that belief. The Officers did not have a search warrant for the house or an arrest warrant for Terry. Taff and Anchondo stood in the driveway while Malek started to go around to the back of the house. Malek testified that as he was approaching the house he could hear an argument going on inside, and that he came back to the front and told Taff and Anchondo that there was a "hostile situation" in the house. Conversely, Plaintiff states that there was no argument inside the house and that he and Terry were in different areas of the residence. Taff knocked on the door and Plaintiff answered wearing his bathrobe.

Taff asked Plaintiff if he was "Mr. Smith." Plaintiff responded that he was Mr. Wilson Smith and that he was not the Smith they were looking for. Taff then asked him to come outside to talk, grabbed his forearm, and pulled him out of his house. Plaintiff continued to repeat that he was Wilson Smith, not Terry Smith. Taff stated "I understand that. Step over here though." Taff pushed Plaintiff against the railing on his front porch and continued struggling to handcuff him. Anchondo approached to help Taff. Plaintiff testified that Taff pushed him off the porch causing him to fall and land on his knees. He states that Taff and Anchondo then shoved his face into the concrete and put a knee into his back as they handcuffed him.

While the struggle ensued, Malek asked Plaintiff, "Is your brother still here?" Malek then saw a child around the age of twelve coming towards the door. Malek asked the child to come towards him. Malek then entered Plaintiff's house. Malek found Terry in a bedroom sitting on a bed. From outside, Taff heard Malek shouting at Terry to show his hands, so he also went inside the house to help Malek restrain Terry. The Officers convened in the living room with Plaintiff and Terry in handcuffs. Plaintiff was soon un-cuffed. An ambulance was called to provide medical assistance to Plaintiff, who had injured his knees.

Plaintiff filed a complaint with the police department's Office of Citizen Complaints ("OCC") and an investigation was conducted. Officer Malek was "exonerated" by the OCC. Plaintiff's claims against Officers Taff and Anchondo were

2

found to be "unsubstantiated."

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Taff, Anchondo, and Malek assert the defense of qualified immunity. The inquiry in analyzing this defense is whether the facts, construed in the Plaintiff's favor, show the officer's conduct violated a constitutional right and whether that right was clearly established. See Saucier v. Katz, 533 U.S. 194, 201 (2001); Pearson v. Callahan, No. 07-751, 2009 WL 128768 (U.S. Jan. 21, 2009).

## CONSTITUTIONAL CLAIMS UNDER § 1983

A. Count I: Excessive Force
   *i. Taff, Anchondo, and Malek*

Plaintiff asserts that Defendants used excessive force against him, thereby violating his Fourteenth Amendment due process rights. However, claims that law

3

Case 4:07-cv-00917-ODS   Document 103   Filed 02/10/09   Page 3 of 11

enforcement used excessive force during an arrest, investigatory stop, or other seizure "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." Graham v. Connor, 490 U.S. 386, 388 (1989). Therefore, to establish a claim under the Fourth Amendment, Plaintiff must prove that Officers Taff, Anchondo, and Malek did not act in an objectively reasonable manner during their seizure of Plaintiff.

"Because 'police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation' the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." Saucier, 533 U.S. at 205 (quoting Graham, 490 U.S. at 397). The Court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting Graham, 490 U.S. at 396).

In viewing the facts in the light most favorable to Plaintiff, the Court concludes the jury could find that Officers Taff and Anchondo acted unreasonably in using force to remove Plaintiff from his home, knocking him to the ground, and handcuffing him. The Officers were not even sure that Terry was at the residence, as Ms. Ross had informed them that he may be there, or that he may be at a nearby relative's home. When Plaintiff answered the door he informed the Officers that he was not the Mr. Smith that they were looking for, an assertion that appeared to be believed by the Officers, as evidenced by Taff's response that he understood that. Furthermore, Plaintiff, who answered the door wearing only a bathrobe, did not appear to pose a threat to the Officers. He also did not show any inclination to resist the Officers, and was given no opportunity to comply with Taff's request to step outside when Taff grabbed his arm and pulled him outside the house. The situation could be considered "rapidly evolving" only because force was used to remove Plaintiff from his house – but nothing had occurred to justify such actions. Because the Officers had no reason to believe Plaintiff had committed any crime, Taff's use of force in removing him from his house and

4

handcuffing him was unreasonable. Likewise, a jury could find that Anchondo also acted unreasonably in using force to help handcuff Plaintiff. However, Plaintiff does not assert that Officer Malek touched him at all, therefore, Plaintiff's excessive force claim against Officer Malek is dismissed.

Having determined a jury could conclude Taff and Anchondo violated Plaintiff's rights, the Court must determine whether the right was clearly established; that is, whether the right would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "[T]he nonmoving party is still given the benefit of all relevant inferences at the summary judgment stage, and if a genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground." Plemmons v. Roberts, 439 F.3d 818, 822 (8th Cir. 2006) (internal quotations omitted).

Again, viewing the facts in the light favorable to Plaintiff, the Officers did not know whether Terry was even at Plaintiff's residence. They did not have a warrant. There is evidence that the Officers knew Plaintiff was not the suspect they were looking for. The Officers had no reason to believe that Plaintiff had committed a crime. Therefore, it should have been clear to Officers Taff and Anchondo that it was unlawful to forcibly remove Plaintiff from his home and handcuff him. Accordingly, Taff and Anchondo are not entitled to summary judgment on the ground of qualified immunity.

### ii. Board of Police Commissioners

Plaintiff also asserts his excessive force claim against the Board of Police Commissioners ("the Board"). A claim brought under § 1983 only imposes liability upon a municipality or similar governmental entity, like the Kansas City Board of Police Commissioners, if the entity itself caused the constitutional injury. A theory of respondeat superior is insufficient for liability to attach; an entity causes the deprivation only if the deprivation occurs pursuant to an official policy or custom. See Monell v. Department of Social Services, 436 U.S. 658 (1978). In this case, Plaintiff alleges his injuries and damages were a result of the Board's policies, practices, and customs to inadequately supervise and train its law enforcement officers concerning the use of

5

Case 4:07-cv-00917-ODS   Document 103   Filed 02/10/09   Page 5 of 11

excessive force.[1]  Second Amended Complaint ¶ 27.  He also alleges the Board's failure to properly investigate and prevent instances of excessive force by its officers caused Plaintiff's damages.  Second Amended Complaint ¶ 29-33.

The undisputed facts demonstrate the Board is entitled to summary judgment. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton v. Harris, 489 U.S. 378, 388 (1989). The failure to train can be considered a deliberate policy choice – as required by Monell – only if the entity acts with deliberate indifference.  Id. at 389-90.  It is not enough for the plaintiff to demonstrate the governmental entity is responsible for the policies actually employed and invite the jury to infer the failings or inadequacies were deliberate choices.  Id.

Proving deliberate indifference requires the plaintiff to show the governmental entity knew its procedures were inadequate and likely to result in a violation of constitutional rights.  E.g., Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996).  Notice can be implied in two circumstances.  First, "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to be deliberately indifferent to the need."  Id. at 390.  Second, a pattern of prior misconduct may be sufficient to indicate the governmental entity's response to a regularly recurring situation is inadequate to prevent it.  Jennings v. Wentzville R-IV School Dist., 397 F.3d 1118, 1122 (8th Cir. 2005); Thelma D. v. Board of Ed. of City of St. Louis, 934 F.2d 929, 932-33 (8th Cir. 1991).

Plaintiff does not provide facts that suggest the Board was on notice that its training was inadequate.  The fact that a constitutional violation may have occurred, by itself, is not enough to show that the training actually provided was inadequate.  In the absence of a pattern sufficient to put the Board on notice, and allow the jury to infer, that

---

[1] Plaintiff also faults the Board for not punishing those who violate the law or rules, but the alleged lack of such punishment did not cause Plaintiff's injuries.

6

the training was inadequate, Plaintiff is obligated to affirmatively demonstrate shortcomings or inadequacies in the training. E.g., Robinette v. Jones, 476 F.3d 585, 591 (8th Cir. 2007); Grayson v. Ross, 454 F.3d 802, 811 (8th Cir. 2006). Plaintiff has not done this: he relies only on the alleged violations in this case and argues that additional training must have been needed because they occurred.[2] This is not enough to demonstrate deliberate indifference.

B. Count II: Covering Up Excessive Force

Plaintiff claims that his Fourteenth Amendment due process rights were violated by the action of Defendants in covering up the use of excessive force pursuant to an official policy or custom of the police department. Plaintiff offers no explanation – either legal or factual – about his claim that the Board had a policy or custom of covering up constitutional violations. Even if this is an accurate description of what happened in *this* case, the Record would not support a conclusion that it happens enough for there to be a *de facto* policy or custom of doing so.

C. Count III: Fourth Amendment Warrantless Entry

*i. Taff, Anchondo, and Malek*

Plaintiff claims Defendants violated his Fourth Amendment rights when they made a warrantless entry into his home. "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Bingham City v. Stuart, 547 U.S. 398, 403 (2006). However, "[a]n

---

[2] In an exhibit Sur-reply attached to Plaintiff's Motion to File Sur-reply (Doc. # 99), Plaintiff contends, "Officers Taff, Anchondo, and Malek have received numerous Community Complaints, allegations of excessive force, and been the party to civil lawsuits concerning wrongdoing and excessive force." However, allegations do not prove wrongdoing, and even if these prior incidents were comparable to this case, Plaintiff has not shown how any remedial measures employed were deficient as required by Robinette and Grayson. Plaintiff has produced no evidence regarding the factual background of these previous complaints or that the investigations of them were inadequate. See Mettler v. Whitledge, 165 F.3d 1197, 1205 (8th Cir. 1999). Therefore, Plaintiff's proposed Sur-reply would not establish there was a pattern of unconstitutional conduct that would have put the Board on notice that its training was inadequate.

7

exception to the warrant requirement permits a law enforcement officer to enter and search a home if he acts with probable cause and exigent circumstances exist." Radlaff v. City of Oelwein, 380 F.3d 344, 348 (8th Cir. 2004). "Exigent circumstances, although typically limited to situations where a life is threatened, a suspect's escape is imminent, or evidence is about to be destroyed, may also be found when there is a compelling need for official action and there is no time to secure a warrant." Id.

As an initial matter, it is questionable whether the Officers had probable cause to believe Terry was even in the house because Ms. Ross stated Terry might be there, or he might be somewhere else. In any event, the evidence of exigent circumstances is not sufficient to support summary judgment. The altercation between Terry and Ms. Ross was long over. Terry was no longer at the scene of the dispute. The Officers admit they were not in hot pursuit of Terry. While the Officers stated they believed Terry might be armed, they have not explained a credible basis for this belief. Malek stated that he was concerned for the safety of the child in the house, who turned out to be Terry's son. However, other than possibly being in the same house as Terry, Malek does not explain how the child was in harm's way. Accordingly, Officer Malek's warrantless entry into Plaintiff's home violated the Fourth Amendment. Likewise, because it is so well-established that a warrantless entry into a home is presumptively unreasonable, Malek is not entitled to summary judgment on the ground of qualified immunity.

Officer Taff entered the house to assist Malek after he heard Malek yelling at Terry to show his hands. Although Malek's improper entry created the exigent circumstances, at this point, Taff reasonably believed Malek needed help, and it was not unreasonable for Taff to enter the home to help him. Likewise, it was not unreasonable for Officer Anchondo to bring Plaintiff back into his home. It was likely cold outside, Plaintiff was wearing only a bathrobe, and Malek, Anchondo, and Terry were inside. Therefore, the Court concludes Plaintiff's Fourth Amendment rights were not violated by Taff's and Anchondo's entry into his home.

### ii. Board of Police Commissioners

Summary judgment is granted as to the Board on Count III for the same reasons it was granted on Count I.

## STATE LAW CLAIMS

A. Count IV: Assault and Battery

There are disputed issues of fact that preclude summary judgment on this claim. In particular, the factual disputes that create a submissible case on Count I also create a submissible case against Taff and Anchondo on Count IV. Likewise, the same issues that preclude judgment for Taff and Anchondo on their claim of qualified immunity on Count I preclude judgment for them on their claim of official immunity on Count IV.[3] Likewise, for the same reasons summary judgment was granted on Count I against Malek, it is granted on Count IV.

Plaintiff claims the Board is liable for Taff and Anchondo's tortious conduct under a theory of respondeat superior. In their official capacities, the members of he Board are immune from suit under the doctrine of sovereign immunity contained in § 537.600, RSMo. See R.D. v. Southwestern Bell Telephone, 759 S.W.2d 617, 620 (Mo. App. E.D. 1988). There are two exceptions to the doctrine of sovereign immunity contained in § 537.600, RSMo, one for the operation of motor vehicles and another for a dangerous condition of property. Plaintiff does not suggest that either apply in this case. Therefore, summary judgment is granted as to the Board on Count IV.

---

[3] Defendants also contend the public duty doctrine bars Plaintiff's state law claims. "The public duty doctrine provides that a public employee may not be held civilly liable for the breach of a duty owed to the general public." Cooper v. Planthold, 857 S.W.2d 477, 479 (Mo. App. E.D. 1993). However, the doctrine "will not apply where defendant public employees act in bad faith or with malice." Southers v. City of Farmington, 263 S.W.3d 603, 612 (Mo. 2008). Because there is a factual dispute regarding whether the Officers acted in bad faith in their use of force, the public duty doctrine does not bar Plaintiff's state law claims.

9

### B. Count V: Negligent Infliction of Emotional Distress

To prevail on Plaintiff's claim of negligent infliction of emotional distress, he must show: "(1) the defendant should have realized that its conduct involved an unreasonable risk of causing the distress, and (2) the emotional distress or mental injury must be medically diagnosable and sufficiently severe to be medically significant." Gibson v. Brewer, 952 S.W.2d 239, 248-49 (Mo. 1997). Plaintiff has produced no evidence that he suffered medically diagnosable emotional distress. Summary judgment is granted on Count V.

### C. Count VI: Intentional Infliction of Emotional Distress

Plaintiff does not respond to Defendants' Motion for Summary Judgment on his claim for intentional infliction of emotional distress. However, among other things, a claim for intentional infliction of emotional distress requires proof that the defendant's conduct caused severe emotional distress that results in bodily harm. See K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. 1996). Plaintiff has not provided evidence that any emotional distress he suffered resulted in bodily harm. Additionally, where a defendant's conduct "amounts to the commission of one of the traditional torts, such as battery, and the conduct was not intended only to cause extreme emotional distress to the victim, the tort of intentional emotional distress will not lie, and recovery must be had under the appropriate traditional common-law action." Id. Defendants' alleged conduct was a battery; there is no evidence that Defendants' conduct was intended only to cause Plaintiff extreme emotional distress. Therefore, summary judgment is granted on Count VI.

### IV. CONCLUSION

For these reasons, summary judgment is (1) granted on Count I as to each Defendant except Taff and Anchondo, (2) granted on Count II as to all Defendants, (3) granted on Count III as to each Defendant except Malek, (4) granted on Count IV as to each Defendant except Taff and Anchondo, and (5) granted as to all Defendants on

10

Counts V and VI.[4]

IT IS SO ORDERED.

                                          /s/ Ortrie D. Smith
                                          ORTRIE D. SMITH, JUDGE
DATE: February 10, 2009                 UNITED STATES DISTRICT COURT

---

[4] Plaintiff also brought a seventh count for punitive damages, however, this is not a claim, but a prayer for relief.